**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| **CORAL CHEMICAL COMPANY, an** | : | **CASE NO.  4:16-cv-23 RLY-DML** |
| **Illinois Corporation, and DONAL** | : | |
| **LAFLAMME,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CHEMETALL US, INC.,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

John J. Garvey, III
Jennifer K. Nordstrom
GARVEY SHEARER NORDSTROM, PSC
300 Buttermilk Pike, Suite 336
Ft. Mitchell, KY  41047
Telephone:     859.308.1490
Email: jgarvey@garveyshearer.com
        jnordstrom@garveyshearer.com
        mburden@garveyshearer.com


Robert M. Shupenus – General Counsel
CORAL CHEMICAL COMPANY
1915 Industrial Avenue
Zion, IL  60099
Telephone: 847.246.6611
Email: rshupenus@coral.com

## EXHIBIT LIST

| EXHIBIT | DOCUMENT |
|---------|----------|
| P | U.S. District Court, District of New Jersey March 8, 2016 Opinion and Order |
| Q | Second Declaration of Mark Bruner |
| R | Defendant's February 26, 2016 correspondence to the New Jersey court |
| S | February 29, 2016 hearing transcript |

NOW COME Plaintiffs, CORAL CHEMICAL COMPANY ("Coral") and DONALD LAFLAMME ("LaFlamme") (collectively "plaintiffs"), by and through counsel, John J. Garvey, III, Jennifer K. Nordstrom, Michelle L. Burden, and Robert M. Shupenus, and for their Supplemental Memorandum of Law in Support of Motion for Temporary Restraining Order and Preliminary Injunction against Defendant CHEMETALL US, INC. ("Chemetall") pursuant to Fed.R.Civ.P. 65(b) state:

## INTRODUCTION

On March 8, 2016, the United States District Court for the District of New Jersey ("the New Jersey court") entered an Order (including an accompanying Opinion) whereby it claimed to be vested with jurisdiction to adjudicate the entire dispute between the parties pursuant to this Court's February 25, 2016 Order.  A copy of the New Jersey court's Order is attached hereto as Exhibit P.

The March 8 Order stands as a textbook example of the reason for Indiana's strong public policy against enforcement of overly broad *in terrorem* restrictive covenants through rewriting them in a manner so as to make them enforceable.  It also shows the wisdom of recent United States Supreme Court precedent that is directly on point, requiring this Court to undertake the threshold analysis to determine the appropriate forum before which this dispute will be adjudicated.   It is critical that the Court step in at this juncture to determine the enforceability of the terms upon which defendant relies in order to circumvent Indiana public policy and thwart the Court's jurisdiction, and to enter a preliminary injunction enjoining defendant from further pursuing its case before the New Jersey court.

## SUBSEQUENT PROCEDURAL HISTORY

Plaintiffs filed their Complaint seeking declaratory relief on February 11, 2016.  Rather than respond to the Complaint and seek transfer to the New Jersey court, defendant simply filed a separate action in New Jersey and immediately obtained injunctive relief on an *ex parte* basis. Plaintiffs responded to defendant's motion filed in the New Jersey court, but sought emergency relief through the present action to prevent defendant from continuing to wrongfully pursue relief in New Jersey rather than seek transfer of this matter.

The Court declined to hear plaintiffs' motion on an emergency basis because a hearing was scheduled to take place in New Jersey on February 29, 2016.  The Court indicated in its February 25, 2016 Order:

> In light of this prompt hearing, the court finds that the interests of justice are best and most efficiently served by this court taking no action at this time on the plaintiffs' motion for temporary restraining order.  All of the plaintiffs' arguments—both on the merits and on the question of the proper forum—can be advanced in connection with that hearing.  The plaintiffs' emergency motion is therefore DENIED WITHOUT PREJUDICE to the merits of the arguments advanced therein.  The court will address the merits of preliminary relief if appropriate after February 29 hearing.

The next day, and continuing over the weekend in advance of the Monday, February 29 hearing in New Jersey, defendant submitted additional information to the New Jersey court, some of which has a direct bearing on the merits in the case at bar.  Second Declaration of Mark Bruner, attached hereto as Exhibit Q.  Additionally, and although the Court explicitly retained jurisdiction in this matter, defendant informed the New Jersey court that this tribunal actually declined to exercise jurisdiction.  Defendant's February 26, 2016 correspondence to the New Jersey court, attached hereto as Exhibit R.

At the time the Court entered its February 25 Order, and as set forth at length in plaintiffs' memorandum in support of its motion, the "geographic territory" in which defendant

sought to enforce the restrictive covenants was undefined.  Plaintiffs either informed defendant of the lack of any identifiable geographic territory or asked defendant to define it on several occasions; therefore, defendant certainly knew that the geographic territory it seeks to protect is a central issue in the parties' dispute—and knew that the Court would likely consider the same when determining which forum should adjudicate the parties' dispute.  Nonetheless, as of February 25 defendant persisted in its refusal to disclose the parameters of the geographic territory at issue.

It was only after the Court entered its February 25 Order that defendant finally disclosed what it claims are the boundaries of the region to which LaFlamme was allegedly assigned—when defendant revealed through a second declaration of Mark Bruner tendered to the New Jersey court that "LaFlamme was assigned to work in Indiana, Kentucky, Eastern Illinois and Western Ohio," confirming that none of the geographic territory for which defendant sought protection is in New Jersey.  Exhibit Q.

It remains unclear whether defendant claims that the geographic territory identified as the "South Central Region" in the cover letter accompanying the Agreement in Consideration for Employment ("Agreement") (Exhibit J) is somehow analogous to "Indiana, Kentucky, Eastern Illinois and Western Ohio," or if defendant claims that it reassigned LaFlamme to this geographic territory at a later date.

If the Agreement is construed to bind defendant as well as LaFlamme (despite the fact that defendant is not a party to the Agreement, did not sign the Agreement, and the Agreement imposes no apparent obligations on defendant), any change in LaFlamme's assigned geographic territory would be evidenced in writing.  The Agreement is explicit in this regard: "[T]his Agreement may not be changed, modified or terminated except in writing by the President of Chemetall." Exhibit C, p.8.  It is doubtful that this document exists, as the New Jersey court cites

the argument made by defendant in the course of the February 29 hearing regarding the actual geographic territory purportedly assigned to LaFlamme:

> [Defendant's] statement at the February 29 hearing that once LaFlamme is deposed, "he will know which areas of the country those were" (*Id.* at 13:17-18) emphasizes the question of territory is a disputed fact based on the evidence before the Court.  Thus, at this stage, Chemetall has presented insufficient evidence for the Court to engage in meaningful review for purposes of issuing an injunction restricting LaFlamme from competing based solely on assigned "territory."

> Exhibit P, quoting February 29, 2016 hearing transcript attached hereto as Exhibit S.

The New Jersey court ruled that although defendant sought a preliminary injunction preventing LaFlamme from competing with it within a certain geographic territory, defendant failed to meet its burden to even identify the purportedly restricted territory.  *Id.*, p.20.  The New Jersey court also determined that although defendant sought preliminary injunctive relief preventing LaFlamme from soliciting defendant's customers worldwide, it did not meet its burden to show that such a broad restriction is necessary to protect a legitimate business interest.  *Id.*, p.23.  In short, the New Jersey court ruled that the restrictive covenants set forth in the Agreement are likely not enforceable as written.

Nonetheless, the New Jersey court ruled that had the Agreement been written to restrict LaFlamme from competing with defendant through selling competitive products to LaFlamme's former customers instead of restricting him from competing within a yet-to-be defined geographic territory, the restrictive covenant would likely be enforceable.  *Id.*, p.23.  The New Jersey court also ruled that had the Agreement been written to prohibit LaFlamme from soliciting certain (yet unidentified) prospective customers of defendant instead of imposing the blanket prohibition set forth in therein, that restriction would likely be enforceable as well.  *Id.*

6

Since the restrictive covenants are unenforceable as written because they are either undefined or overbroad, the New Jersey court stepped in to save defendant through rewriting the covenants. The New Jersey court removed the geographic territorial restriction and inserted a customer-based restriction in its place.  It also removed the worldwide ban on LaFlamme soliciting any customer or prospective customer of defendant that may purchase any of defendant's 1500 products used in more than 30 industries, and instead imposed a restriction based on former customers of LaFlamme.  The New Jersey court then ruled that LaFlamme violated the new covenants, and enjoined LaFlamme from further violations of them.

## **ARGUMENT**

Rather than abide by well settled law though seeking transfer of this case to New Jersey, defendant attempts to circumvent Indiana's strong public policy through presenting the same dispute to a forum that does not afford its residents the same public policy protections. Defendant utilizes this tactic instead of following established precedent because applicable law decimates its position.  Furthermore, the New Jersey court has not yet ruled on plaintiffs' motion to transfer the New Jersey case to Indiana, but has already indicated its understanding that this Court declined to exercise any jurisdiction whatsoever and effectively transferred this case to New Jersey.  The New Jersey court's understanding is not only inconsistent with the plain language of the Court's February 25 Order, but also inconsistent with binding precedent.

**I.     THE NEW JERSEY COURT CANNOT DETERMINE THE VALIDITY OR EFFECT OF THE FORUM SELECTION CLAUSE.**

Defendant sought emergency injunctive relief before the New Jersey court claiming that the Agreement's forum selection clause vested it with jurisdiction.  Defendant did so without following the protocol mandated by the United States Supreme Court, but it informed the New Jersey court that it would do so through motion to the Court seeking transfer of this case to New

Jersey.   In its memorandum of law in support of its motion for emergency injunctive relief,

defendant asserts:

> Under New Jersey law, forum selection clauses are enforceable in the absence of "fraud, undue influence, or overweening bargaining power," or unless the clause violates a "strong public policy." *Paradise Enters. Ltd. v. Sapir*, 811 A.2d 516, 521 (N.J. Super. Ct. App. Div. 2002). Here, the parties have a material connection to New Jersey because Chemetall's principal place of business is here. Moreover, LaFlamme voluntarily entered into the Agreement as a condition of employment. (Exs. A, B; Bruner Dec. at ¶ 13). Therefore, the forum selection clause is enforceable, **and upon a motion by Chemetall, the Indiana Court will dismiss the Indiana Action in favor of the agreed to New Jersey forum**.

Exhibit I, p.15 (emphasis ours).

Defendant's assertion seemed to be indicative of its understanding that it is required to

seek relief from the Court in the case at bar in order to enforce the forum selection clause it seeks

to enforce, but defendant's anticipated motion has yet to be filed.  This is significant because the

New Jersey court cannot rule on the enforceability of the forum selection clause.  This issue can

only be adjudicated by this Court.

Immediately after the Court entered its February 25 Order, defendant's counsel informed

the New Jersey court that this Court actually declined jurisdiction generally, and neglected to

point out that the Court merely denied plaintiffs' Motion for Temporary Restraining Order

without prejudice pending the outcome of the February 29 hearing in New Jersey.  Exhibit R.  To

the contrary, the February 25 Order is specifically targeted to plaintiffs' Emergency Motion for

Temporary Restraining Order requesting that Chemetall be enjoined from pursuing the New

Jersey action—and not its Motion for Preliminary Injunction.

The New Jersey court did not directly address the validity of the forum selection clause,

which is not necessarily a surprise given that defendant informed the New Jersey court that it

would ask the Court herein to transfer the case to New Jersey as it is required to do.  Even so, the

8

New Jersey court determined that the February 25 Order actually vested it with the authority to rule on all issues:

> To the extent LaFlamme argues that, "[p]erhaps most important, there is a pending first-filed action in Indiana before Chief Judge Young that will dispose of the issues in this case." (See Defs.' Opp'n at 19), Judge McVicker Lynch answered that question by permitting this Court to address the issues raised by the parties in the first instance—on both the merits and the appropriate forum.

Exhibit P, fn.6.

Inherent in the February 25 Order is that the Court would address plaintiffs' motion seeking injunctive relief enjoining defendant from proceeding with the New Jersey case "if appropriate," meaning it would address plaintiffs' motion if the New Jersey court refused to stay, dismiss or transfer the case to Indiana.  There is no other fair reading of the February 25 Order, as <u>the only relief sought by plaintiffs is an Order restraining defendant from proceeding with the New Jersey lawsuit</u>.  The Court determined that the interests of justice would not be served in an efficient manner if addressing the merits of plaintiffs' argument would be rendered unnecessary by the New Jersey court, but that it would address the merits of plaintiffs' argument otherwise. The New Jersey court's interpretation, on the other hand, yields no possible conclusion other than that the Court intended to address the merits of whether defendant should be enjoined from proceeding with the New Jersey case only in the event the New Jersey court's decision rendered the requested injunctive relief unnecessary.

In fact, the New Jersey court's determination that the Court permitted it "to address the issues raised by the parties in the first instance—on both the merits and the appropriate forum" would lie contrary to well established law that prohibits the New Jersey court from being the proper tribunal to undertake the analysis necessary to determine the forum in which the case should proceed.

Defendant claims that plaintiffs "improperly filed" their Complaint in Indiana because the Agreement includes a forum selection clause favoring New Jersey.  The same allegation was made in *Atlantic Marine Constr. Co. v. United States Dist. Court*, 134 S.Ct. 568; 187 L.Ed.2d 487 (2013), wherein plaintiff filed suit in a venue contrary to that set forth in the forum selection clause of the contract between the parties.

In *Atlantic Marine*, the Court lays out the standard that a party seeking to invoke a forum selection clause must follow (as defendant claimed it would do).   As opposed to simply filing a separate action in its desired forum, a party seeking to enforce a forum selection clause must seek transfer to that forum through a motion pursuant to 28 U.S.C. §1404(a), which is the codification of the doctrine of *forum non conveniens*.   *Id.* at 580.   As a threshold matter, plaintiffs dispute that the forum selection clause at issue is valid, as defendant is neither a party nor a signatory to the Agreement, and the Agreement does not bind defendant to do anything— but this argument is more appropriately made in response to defendant's motion to transfer. Assuming defendant files its motion to transfer, and assuming the Court determines that the forum selection clause is at least valid and thus susceptible to the required analysis set forth below, such analysis leads to the inescapable conclusion that the forum selection clause should not be enforced.

In *Atlantic Marine*, defendant properly sought to invoke the forum selection clause through transfer pursuant to 28 U.S.C. §1404(a).  The district court considered a variety of public and private interest factors, with the forum selection clause being one such factor, and determined that defendant "failed to carry its burden of showing that transfer 'would be in the interest of justice or increase the convenience to the parties and their witnesses."   Thus, the motion to transfer was denied.  *Id.* at 576.

The Supreme Court ruled that the district court followed the wrong standard, instead holding that in cases wherein a party attempts to invoke a valid forum selection clause, the burden is on the party opposing application of the forum selection clause. *Id.* at 580. In such cases, district courts are required to undertake a modified §1404(a) analysis wherein:

1) the choice of venue of the party resisting application of the forum selection clause is given no weight and instead bears the burden of showing why the case should not be transferred;

2) private interest factors that courts normally weigh through a §1404(a) analysis cannot be considered; and

3) the party otherwise bound by a forum selection clause does not enjoy the benefit of application of the venue's choice of law rules; rather, the court adjudicating the motion to transfer should apply the laws of the state identified in the contract.

*Id.* at 581-83.

The Supreme Court ruled that "a proper application of §1404(a) requires that a forum selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id.* at 579, quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22 at 30-31, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988).

As the parties opposing the forum selection clause, plaintiffs bear the burden of showing that the forum selection clause should not be enforced—and plaintiffs stand ready to meet this burden. Assuming the Court makes the threshold determination that plaintiffs would be "otherwise bound" by the forum selection clause—the Court must apply New Jersey law in determining whether the forum selection clause requires transfer to New Jersey.

Under New Jersey law, forum selection clauses are routinely upheld--even in situations involving adhesion contracts, unequal bargaining power, and the absence of negotiations over the clause. *Heartland Payment Sys. v. Steves*, 2015 U.S. Dist. LEXIS 160735, *6 (D.N.J. December

1, 2015)*, citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594-95, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991) (holding that forum selection clause on back of cruise ticket was enforceable despite lack of bargaining over the terms of the clause).  A party seeking to defeat enforcement of a forum selection clause must show:

> 1)   that the forum selection clause is the result of fraud or overreaching;
>
> 2)   that enforcement would violate a strong public policy of the forum; or
>
> 3)   that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable."

> *Id.* at *6-7, citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3rd Cir. 1983).

Given plaintiffs' burden as articulated in *Atlantic Marine*, as well as their burden once New Jersey law is applied, one would fairly expect that defendant would seek relief from the Court as it claimed it would.  Defendant's reluctance to seek transfer to New Jersey is almost certainly rooted in New Jersey's own public policy exception, as defendant recognizes that if New Jersey law is applied by the Court as required, the Court will likely determine that enforcement of the forum selection clause would result in a wholesale violation of Indiana's strong public policy against *in terrorem* restrictive covenants, as well as Indiana's strong public policy against rewriting such covenants in a manner in which such covenants should have been drafted in the first place.  Regardless, it is not necessary for the Court to weigh any public policy considerations in determining whether defendant should be permitted to hide from the Court and refuse to properly seek transfer as a means of avoiding application thereof, as *Atlantic Marine* requires defendant to properly seek transfer—rather than simply assume that the Court would have granted its motion had it filed one.

The New Jersey court makes scant reference to the forum selection clause in its Opinion, but its parenthetical reference to it reveals that its understanding of the proper procedure for addressing the validity and enforceability of a forum selection clause is contrary to both *Atlantic Marine* and *Heartland Payment*.  The New Jersey court indicates:

> Coral knew that the restrictions on [LaFlamme's] behavior are widely protectable but was gambling that it could have an Indiana court review the issue (contrary to the forum selection clause), and then that court would disregard the terms of the Agreement and apply Indiana law (that recognizes such rights as reasonable, but will not allow overly broad agreements to be so reformed).

Exhibit P, p.28.

The New Jersey court apparently assumed that the forum selection clause is both valid and enforceable, perhaps believing that determination of the validity and enforceability of the forum selection clause was within its purview to decide.  Had the Agreement included a forum selection clause identifying Indiana the appropriate forum but defendant filed its cause of action in New Jersey, the New Jersey court would be vested with the authority to make this determination—and could invoke New Jersey public policy to refuse to enforce the forum selection clause.  However, the New Jersey court cannot step into the shoes of this Court and apply New Jersey public policy when the case is first filed in Indiana.

This Court did not turn *Atlantic Marine* on its head.  It did not determine that the New Jersey court could apply New Jersey law and ignore Indiana public policy simply because there was a prompt hearing scheduled regarding defendant's motion seeking injunctive relief in the second-filed case.  The Court did not decline to undertake the required §1404(a) analysis, and did not subject LaFlamme to enforcement of *in terrorem* restrictive covenants that, as detailed below, the New Jersey court has already ruled are unenforceable as written.

## II.   ENFORCEMENT OF THE FORUM SELECTION CLAUSE VIOLATES INDIANA'S STRONG PUBLIC POLICY.

In its March 8 Order, the New Jersey court acknowledges that enforcement of the restrictive covenants would violate Indiana's public policy.   Exhibit P, pp.11-12.   The New Jersey court also acknowledges that the restrictive covenants are likely not enforceable as written under New Jersey law.  *Id.*, pp. 21-23.   Nonetheless, the New Jersey court rewrote the restrictive covenants in defendant's favor—so much so that it changed the restrictive covenants from one fundamental type to another.   The Order not only serves as a textbook example of the type of "blue penciling" that Indiana courts refuse to utilize, but also stands testament to the underlying basis for Indiana's strong public policy against allowing employers to draft *in terrorem* provisions knowing that courts will simply rewrite them in the event they are challenged.

Defendant sought and obtained injunctive relief from the New Jersey court based on what it claimed were enforceable geographic restrictions set forth  in the Agreement.   However, after plaintiffs were given the opportunity to present their argument that defendant failed to articulate the geographic territory within which it sought to enjoin LaFlamme from working, the New Jersey court acknowledged that defendant failed to identify the geographic territory in which LaFlamme should be enjoined from competing:

> Furthermore, Chemetall acknowledges that "'territory' is not a defined term in the contact," [sic.] but argues that "it would be given its ordinary and plain meaning."  Hr'g Tr. at 12:3-6. While that may be true, to obtain an injunction (or even to ultimately prevail on this issue), Chemetall has the burden of showing that "territory" has an ascertainable meaning, and it further must explain how imposition of such a territorial boundary does not pose an undue hardship on LaFlamme. Chemetall has not done so here. Its statement at the February 29 hearing that once LaFlamme is deposed, "he will know which areas of the country those were" (*Id*. at 13:17-18) emphasizes that the question of territory is a disputed fact based on the evidence before the Court. Thus, at this stage, Chemetall has presented insufficient evidence for the Court to engage in meaningful review for purposes of issuing an

injunction restricting LaFlamme from competing based solely on assigned "territory."

*Id.*, pp. 20-21.

Despite the New Jersey court's acknowledgement that defendant is not entitled to injunctive relief because it failed to meet its burden of identifying the protected "territory," the New Jersey court granted injunctive relief anyway.  In doing so, the New Jersey court took action that Indiana courts refuse to take—deciding that since the geographic territory referenced in the Agreement could not be ascertained, it would ignore the lack thereof and insert an activity covenant to which neither party agreed.  The New Jersey court justified this action through noting that in certain circumstances, courts do not require geographic territorial restrictions to be set forth in restrictive covenants.  However, the cases upon which the New Jersey court relies indicate that while geographic restrictions are sometimes unnecessary, they are unnecessary if the restrictive covenants pertain to former *customers* rather than a former geographic territory.  The New Jersey court ignored this distinction even after quoting applicable law verbatim:

> The Court agrees that geographic parameters are not always necessary for the enforcement of a non-solicitation clause.  *See Trico Equip.*, 2009 WL 1687391, at *7 ("While New Jersey courts seem to require geographic limits for non-compete clauses, geographic limitations do not appear necessary for non-solicitation provisions."); *Pathfinder, L.L.C. v. Luck*, No. 04-1475, 2005 WL 1206848, at *7 (D.N.J. May 20, 2005) **\*("[B]ecause the restrictive covenant was limited to clients**, for a limited duration, it is not unreasonable merely because the proposed geographic limits were open-ended."; *Platinum Mgmt., Inc. v. Dahms*, 666 A.2d 1028, 1040 (N.J. Super. Ct. Law Div. 1995) ("[T]he failure to restrict the geographical area is not significant, **since the provision essentially sought to protect existing customer relationships rather than a territorial sphere of influence**.")

*Id.*, pp. 21-22  (emphasis ours)

In other words, if a restrictive covenant is in the nature of an "activity covenant," *i.e.* one that prohibits an employee from soliciting former customers *instead of* restricting the employee based on geographic territory, there is often no need to impose a geographic restriction.

The New Jersey court misinterpreted the authority upon which it based its decision, as the cases upon which it relies pertain to restrictive covenants wherein the parties agreed to restrictions based on customers instead of geographic territories.  Specifically, *Trico Equip.* involves a restrictive covenant prohibiting the former employee from working for an entity "if such entity competes with the Company for business with regard to any customers I called on, solicited, attempted to solicit, had contact with, or became aware of during the term of my employment." *Trico Equip*, 2009 U.S. Dist. LEXIS 50524, *4-5 (D.N.J. June 13, 2009).  The restrictive covenant at issue in *Pathfinder* also pertains to existing customer relationships rather than geographic territory, which is why the Court determined that no geographic territory needed to be identified.  *Pathfinder*, 2005 U.S. Dist. LEXIS 44782, *19 (D.N.J. May 20, 2005).  The same is true with respect to the restrictive covenant at issue in *Platinum Management.  Id.* at 1039-40.

The New Jersey court also found that Chemetall failed to meet its burden to show that the non-solicitation restriction as written—which prevents LaFlamme from soliciting any customer or prospective customer of Chemetall regardless of whether the customer was solicited by LaFlamme—is enforceable.

> The more difficult question based on the information before the Court is whether Chemetall is likely to be successful in proving that a broader non-solicitation restriction is enforceable. For purposes of the present motion, the Court finds that Chemetall has not met its burden with respect to such a broader restriction. It is unclear if LaFlamme even knows all of the global customers who have purchased the products he dealt with, much less the other 1450 products that he did not sell. Chemetall has submitted no particularized information for how the pool beyond his direct customers could reasonably be identified, and why the net should

stretch so far given that LaFlamme dealt with a small fraction of Chemetall's products.

*Id.*, p.23

Even so, the New Jersey court found that a less restrictive non-solicitation covenant would be enforceable, and then enjoined LaFlamme from violating the previously-unwritten and unidentified covenant—essentially determining that LaFlamme should have somehow anticipated that the New Jersey court would utilize the blue pencil doctrine the way it did and save defendant from its *in terrorem* restriction that prevented him from working in any competitive capacity anywhere in the world.  LaFlamme did not reasonably anticipate that any court would utilize the blue pencil doctrine at all, much less to this extent.

The Agreement provides that:

> LaFlamme will not "directly or indirectly… [as an] employee… engage or participate in any employment or activity intended to or which does compete with Chemetall within any territory to which Employee was assigned by Chemetall during the two (2) years prior to the termination.

Here, defendant unquestionably sought and initially obtained injunctive relief based on the existence of purported geographic boundaries over which it sought a territorial sphere of influence, even though the geographic territory has yet to be defined with any degree of precision.  Defendant neither alleged the existence nor sought enforcement of an activity covenant, as the Agreement did not contain one—at least not until the New Jersey court utilized the blue pencil doctrine.

While the New Jersey court could not have been more explicit regarding its determination that defendant failed to meet its burden, it nonetheless stepped in to save Chemetall from its overreaching covenants and rewrote the Agreement.  The New Jersey court decided that since Chemetall was unable to show that the Agreement contained enforceable geographic restrictions—even though it entered a TRO based on the same purported geographic

restrictions—it would simply delete the geographic restrictions and impose an activity covenant instead.   The New Jersey court also found that although that the non-compete and non-solicitation restrictions are unenforceable, defendant would likely succeed in proving that less restrictive covenants would be enforceable—and even invited defendant to propose new restrictions at a later date.

The New Jersey court essentially determined that the parties either should have or meant to agree to activity covenants instead of covenants based on geographic territory.  The New Jersey court then decided defendant should have sought relief based on the type of restrictive covenant the parties should have agreed upon from the beginning.  From there, the New Jersey court wrote in completely new terms, determined that LaFlamme violated them, and enjoined him from further violations.

The New Jersey court plainly found the restrictive covenants unenforceable as written, but rescued defendant by substituting one type of restrictive covenant for another.  This action on the part of the New Jersey court eviscerated the distinction between the types of covenants recognized in Indiana, and which also seem to be recognized to some extent in the authority cited by the New Jersey court.

Indiana courts recognize that one method of limiting a covenant's scope to make it enforceable is through imposition of territorial boundaries, while a second and distinct method is through limitation of actual persons or entities with whom contact is prohibited. *Commercial Bankers Life Ins. Co. v. Smith*, 516 N.E.2d 110, 114 (Ind. Ct. App. 1987), citing *Seach v. Richards, Dieterle & Co.*, 439 N.E.2d 208, 213 (Ind. Ct. App. 1982).

While Indiana courts will not enforce *in terrorem* restrictive covenants in any event, they will not step in to save employers from the consequences of using the wrong type of restrictive covenant as the New Jersey court did in this instance.  In *Commercial Bankers,* the Court held

that rewriting a restrictive covenant in the manner in which the New Jersey court did is explicitly prohibited:

> Further, although we held that a specific class could wholly replace the geographical term, we did not state that the class could be used to define a geographical boundary. The two terms are distinct. Either a defined, geographical boundary must exist in the covenant, or a specific limited class of persons must be listed as those with whom contact is prohibited**;** references of one cannot be used to define the other. **Commercial asks us to locate a geographical boundary in the Covenant by using a customer list to define a geographical area. This we cannot do. Accordingly, no geographical or spatial limitations exist. We cannot and will not create them**.
>
> *Id.* (emphasis ours)

In *Zimmer, Inc. v. Masters*, 2014 U.S. Dist. LEXIS 43151 (N.D. Ind. Mar. 31, 2014), the Court not only followed *Commercial Bankers* to the letter, but did so based on substantially identical terms in the restrictive covenants at issue.

At the outset, *Zimmer* recites black letter Indiana law regarding enforceability of a covenant not to compete; namely, that it must be reasonable in terms of time, geography, and types of activity prohibited. *Id.* at *10, citing *MacGill v. Reid*, 850 N.E.2d 926, 930 (Ind. Ct. App. 2006). The period of restraint was one year in both *Zimmer* and in the case at bar, and the reasonableness of this length of time was/is not disputed in either case. *Id.* Instead, both in *Zimmer* and in this matter, the parties dispute the reasonableness of the geographic territory. In *Zimmer*, as in this case, the restrictive covenant prevented the employee from selling or marketing competitive products to any of the employer's customers or "Active Prospects" within the "Restricted Geographic Area," which is defined as "any geographic territory assigned to Employee during Employee's last two years of employment with Company." *Id.* at *13. Furthermore, the restricted geographic area in *Zimmer* was not defined by actual boundaries; rather, it was defined by an extrinsic customer list.

The slight difference in the case at bar is that although the geographic territory is not defined in the Agreement, extrinsic evidence is required in order to ascertain these boundaries. This distinction is now rendered inconsequential because the New Jersey court effectively deleted the geographic territorial limitation altogether and swapped it with an extrinsic customer list.

In *Zimmer*, the Court unequivocally ruled that application of the "blue pencil" doctrine in this manner is improper, and that courts will not substitute a geographic territorial restriction with a restriction based on an extrinsic customer list once the time comes for the restrictive covenant to be enforced.

> The *Keefer* decision might have reached the outer limits of Indiana law by defining what the agreement referred to as a "geographic area" by easily identified accounts rather than geography — substituting, when the time for enforcement, a client list for what the parties agreed would be a geographic area. Zimmer now asks the court to step across that boundary by interpreting a contract term, "geographic area," to mean "assigned accounts" with no agreement as to how an account is assigned for purposes of the non-solicitation covenant. This court has no reason to think the highest court in Indiana would extend the law in that way in light of its disfavor of covenants not to compete and its canon that such covenants are to be construed strictly against the employer. *Central Indiana Podiatry, P.C. v. Krueger*, 882 N.E.2d 723, 729 (Ind. 2008). Such an expansion of Indiana law must come, if at all, from the Indiana courts, rather than the federal courts. "Either a defined, geographical boundary must exist in the covenant, or a specific limited class of persons must be listed as those with whom contact is prohibited; references of one cannot be used to define the other."
>
> *Id.* at *21-22, quoting *Commercial Bankers Life Ins. Co. of America v. Smith*, 516 N.E.2d 110, 114 (Ind. Ct. App. 1987), citing *Zimmer US, Inc. v. Keefer*, 2012 U.S. Dist. LEXIS 151878 (N.D. Ind. Oct. 23, 2012).

## CONCLUSION

The stark differences between the laws of Indiana and New Jersey with respect to enforceability of overly broad restrictive covenants were readily apparent even before the New Jersey court issued its March 8 Order; however, the Order leaves no doubt regarding how enforcement of the forum selection clause and application of New Jersey law (aside from determining whether the forum selection clause can be invoked) will result in an unbridled violation of the strong public policy of Indiana.

Should the Court adopt the interpretation of its February 25 Order in the manner in which defendant and the New Jersey court have, it would be akin to stripping LaFlamme of the protections afforded him pursuant to the strong public policy of Indiana simply because the New Jersey court had a hearing scheduled to take place a few days later.  It would also be tantamount to holding that defendant is somehow able to invoke the forum selection clause in the Agreement without following the procedure mandated by the Supreme Court in *Atlantic Marine*, as well as a departure from the Court's decision in in *Belden Inc. v. Nexans, Inc.*, 2013 U.S. Dist. LEXIS 104808, *3 (S.D.Ind. July 26, 2013), wherein the Court recognizes that the "first-to-file" rule, dictates not only which forum is appropriate, but also which forum should decide which forum is appropriate.

Plaintiffs simply request that defendant be required to fulfill its comparatively insignificant burden of seeking transfer to New Jersey through invocation of the forum selection clause in the manner set forth in *Atlantic Marine*, that the Court engage in the modified §1404(a) analysis, make a determination as to which forum is the appropriate tribunal to adjudicate the parties' dispute, and grant injunctive relief as necessary thereafter.

WHEREFORE, plaintiffs respectfully request that the Court enter an Order restraining defendant from proceeding with the New Jersey lawsuit pending further proceedings before the Court, together with all other relief the Court deems proper.

CORAL CHEMICAL COMPANY and
DONALD LAFLAMME, Plaintiffs


By:   *s/ Robert M. Shupenus*

John J. Garvey, III
Jennifer K. Nordstrom
GARVEY SHEARER NORDSTROM, PSC
300 Buttermilk Pike, Suite 336
Ft. Mitchell, KY  41047
Telephone:    859.308.1490
Email:  jgarvey@garveyshearer.com
        jnordstrom@garveyshearer.com
        mburden@garveyshearer.com


Robert M. Shupenus – General Counsel
CORAL CHEMICAL COMPANY
1915 Industrial Avenue
Zion, IL  60099
Telephone: 847.246.6611
Email: rshupenus@coral.com