# EXHIBIT Q

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHEMETALL US, INC.,**<br><br>  Plaintiff,<br><br>  -against-<br><br>**DONALD LAFLAMME and CORAL CHEMICAL COMPANY,**<br><br>  Defendants. | Civil Action: 2:16-cv-00780<br><br>**SUPPLEMENTAL DECLARATION OF MARK P. BRUNER** |

**MARK P. BRUNER** declares, pursuant to 28 U.S.C. § 1746, that:

1. I am the Vice President of Sales at Chemetall U.S., Inc. ("Chemetall"). In this role, I was responsible for overseeing over 100 Sales/Service Representatives in the General Industry Sales division, including Defendant Donald LaFlamme ("LaFlamme").

2. I submit this supplemental declaration in further support of Chemetall's application for a Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, prohibiting LaFlamme from breaching his contractual non-competition and non-solicitation obligations to Chemetall, and from disclosing any of Chemetall's confidential business and proprietary information to any third party, and prohibiting Defendant, Coral Chemical Company ("Coral"), from aiding, abetting, or assisting LaFlamme from engaging in any activity that violates his contractual obligations to Chemetall. I have personal knowledge of the matters set forth herein.

3. In opposing Chemetall's request for relief, LaFlamme claims that he does not know what his "Territory" was when he was at Chemetall. The idea that LaFlamme is contending that he did not know what geography he worked in on behalf of Chemetall or what

NY01\GottA\4265472.1

territories he was in when calling on Chemetall customers is, in my opinion, absurd. LaFlamme was assigned to a specific geographic territory on behalf of Chemetall. LaFlamme's May 17, 2010 offer letter states that he would be employed as a Technical Sales Manager ("TSM") for Chemetall's South Central Region. (Docket No. 1-5 Ex. A).

4. Consistent with his offer letter, LaFlamme was assigned to work in Indiana, Kentucky, Eastern Illinois, and Western Ohio. Throughout his career at Chemetall, he primarily serviced customers in this geographic territory.

5. In addition, while LaFlamme's customers were primarily based within this particular geographic territory, his influence with a particular customer could, and often did, extend outside of his assigned geographic territory based on the nature of Chemetall's relationship with the customer and/or LaFlamme's relationships with particular individuals working for Chemetall customers. For example, LaFlamme was responsible for servicing Chemetall's GE account, by far the largest and most important customer he serviced on behalf of Chemtall. GE's key purchasing personnel were located in Louisville, Kentucky, which is within LaFlamme's specific geographic territory. However, Chemetall's contracts with GE, which were developed by LaFlamme on behalf of Chemetall with specific GE Louisville personnel, were used on a national basis.

6. As explained in my Declaration dated February 15, 2016 (Docket No. 1-5), LaFlamme also participated in semi-annual regional and annual national sales meetings where members of the sales team reported sales made on their customer accounts, as well as the prospective customers they were targeting in their respective geographic territories, and their strategies for landing those accounts. Accordingly, LaFlamme had direct access to information relating to customer accounts outside of his assigned geographic territory.

NY01\GottA\4265472.1

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 26, 2016                By: *Mark P. Bruner*
                                            Mark P. Bruner
                                            Chemetall US, Inc.